**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FT. WAYNE DIVISION**

| | |
|---|---|
| Robert Kim, | : |
| | : |
| Plaintiff, | : Civil Action No.: 1:14-cv-00312-JD-SLC |
| v. | : |
| | : |
| Cellco Partnership, d/b/a Verizon Wireless, | : |
| | : |
| | : |
| Defendant/Third-Party Plaintiff, | : |
| | : |
| v. | : |
| | : |
| Tosha Tarter, | : |
| | : |
| Third-Party Defendant. | : |
| | : |

<u>**THIRD-PARTY DEFENDANT'S MEMORANDUM OF LAW IN**</u>
<u>**SUPPORT OF MOTION TO DISMISS THIRD-PARTY COMPLAINT**</u>

Third-Party Defendant, Tosha Tarter ("Tarter"), by counsel, hereby provides this

Memorandum in support of her motion to dismiss Defendant, Cellco Partnership d/b/a Verizon

Wireless' ("Verizon"), third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff, Robert Kim ("Kim"), initiated this action alleging that Verizon violated the

Telephone Consumer Protection Act ("TCPA") which prohibits the making of automated or

prerecorded telephone calls to the called party without the called party's prior express consent.

47 U.S.C. § 227(b)(1)(A).  In response, Verizon has filed a third-party complaint against Tarter,

the Plaintiff's fiancé.  The third-party complaint is frivolous, fails to state a claim and should be

dismissed.

Verizon's third-party complaint, alleging indemnity and breach of contract, is based

entirely on its service contract and Customer Agreement with Tarter, copies of which are

purported to be attached as <u>Exhibit A</u> to the third-party complaint and referred to collectively as the "Agreement.".  *See* Dkt. #12-1.  However, the Agreement is devoid of the called party's prior express consent and of any agreement, warranty and/or representation by Tarter that the phone number at issue is owned by her or that she is providing consent on behalf of the called party (the Plaintiff herein).  *Id*.  Thus, there is nothing to establish any basis for indemnification or breach by Tarter.  Instead, the third-party complaint utterly fails the Rule 12(b)(6) standard.  Tarter respectfully requests that the action against her be dismissed.

**BACKGROUND**

Kim initiated this action on October 7, 2014.  *See* Complaint, Dkt. #1.  He alleged that within the last year, Verizon started calling his cellular telephone attempting to collect a consumer debt from someone other than him.  *Id.* ¶¶ 5-6.  When Kim answered the calls, he heard a prerecorded message indicating that Verizon was attempting to reach Tarter.  *Id.* ¶ 6.  Kim never provided his cellular phone number to Verizon, nor did he ever consent to be contacted on his cellular phone.  *Id.* ¶ 7.

In its third-party complaint, Verizon alleges in connection with the Agreement that Tarter represented to Verizon her phone number to be (909) 638-7582, and that such number was her home number. *See* Dkt. #12, p. 3, ¶ 9.  However, nowhere in the Agreement does Tarter specifically represent that such phone number belongs to, is owned by or is registered to her.  *See* Dkt. #12-1.  Verizon further alleges that pursuant to the Agreement, Tarter consented to allow Verizon and anyone who collects on its behalf to contact her about her account status, including past due or current charges, using prerecorded calls or an automatic telephone dialing system using any phone number she provides. *Id.* ¶ 10.  In reality, the Agreement actually states:

> You consent to allow Verizon Wireless and anyone who collects on our behalf to contact you about your account status, including past due or current charges,

using prerecorded calls, email and calls or messages delivered by an automatic telephone dialing system **to any wireless phone number or email address you provide**.  Verizon Wireless will treat any email address you provide as your private email that is not accessible by unauthorized third parties.  Unless you notify us that your wireless service is based in a different time zone, **calls will be made to your cellular device during permitted calling hours based upon the time zone affiliated with the mobile telephone number you provide**.

Dkt. #12-1, p. 6 of 14 (emphasis added).  Once again, there is no indication in the Agreement that Tarter provided a wireless or cellular phone number which she represented as belonging to her and on which Verizon could use to contact her.

## ARGUMENT

### I.   Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the complaint.  *Hendrix v. City of Michigan City, Ind.*, 2014 WL 465639, *1 (N.D. Ind., Feb. 5, 2014).  In order to survive a motion to dismiss, a "complaint must contain allegations that 'state a claim to relief that is plausible on its face.' "  *Id.* (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L .Ed. 2d 868 (2009)). All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Luevano v. Wal–Mart Stores, Inc.,* 722 F.3d 1014, 1027 (7th Cir.  2013). A plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.' "  *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir.  2011).  This means that "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *Alam v. Miller Brewing Company,* 709 F.3d 662, 666 (7th Cir.  2013) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Here, the very Agreement upon which Verizon relies to plead its third-party complaint highlights the insufficiency of its claim and confirm that its allegations do not plausibly suggest

3

any right to relief.  Accordingly, the third-party complaint should be dismissed.

**II.      The Third-Party Complaint Fails to Set Forth a Claim against Tarter**

The inadequacy of Verizon's third-party complaint is heightened by its own Agreement which provides no basis for its claim against Tarter.  Further, the third-party complaint does not allege that Tarter knew anything at all about the TCPA or Verizon's potential liability such that she could foresee any future action against Verizon.  Most importantly, it does not allege that Tarter warranted that the called party, her fiancé, was providing *his* express consent to calls to the number Tarter provided.  Stripped of the "mere conclusory statements" or "legal conclusions" which this Court must ignore (*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.  2009)), the third-party complaint fails to provide notice of the factual basis for Verizon's claim.

Of note here is that the potential claimant is not a *pro se* litigant, it is *Verizon*, a company with a market capitalization of over $200 billion dollars and vast resources and expertise at its disposal. *See* http://www.bloomberg.com/quote/VZ:US.  Yet Verizon cannot deign to articulate a cause of action or support such a claim with facts consistent with its Agreement.  Here, the entire exercise is a transparent attempt to pressure the actual Plaintiff, Robert Kim, by forcing his fiancé to defend a frivolous third-party suit.

The Seventh Circuit has held that the TCPA requires consent from the person who was actually called, not the person the caller asserts it was attempting to call.  *Soppet v. Enhanced Recovery*, 679 F.3d 637, 643 (7th Cir. 2012).  In considering the phrase "called party," the court noted that while the "called party" who must give consent is not defined, Section 227(b)(1)(A)(iii) states that a caller is liable for a TCPA violation when a call goes to a "cellular telephone service ... for which the called party is charged for the call." *Id.*  From this, the court concluded that the "called party" in this context is the person who is "charged for the call," *i.e.*

the party who is financially responsible for the account connected with the cellular telephone number that is called. *Id.* at 640.  In support of this conclusion, the court noted that for the seven uses of the phrase "called party" in Section 227, "[f]our unmistakably denote the current subscriber (the person who pays the bills or needs the line in order to receive other calls); one denotes whoever answers the call (usually the subscriber); and the others (the two that deal with consent) have a referent that cannot be pinned down by context." *Id.*  None of the uses refer to the "intended recipient of the call." *Id.*  "The phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?". *Id.*

Instructive here is the Federal Communications Commission's ("FCC") recent finding that prior express consent under the TCPA may be obtained and conveyed through an intermediary where the calling party expressly requires that the intermediary represent that he or she has obtained the consent of the called party. *In the Matter of Groupme, Inc./Skype Communications S.A.R.L. Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 29 F.C.C. Rcd. 3442, ¶¶ 8-9 (2014) (hereinafter, "GroupMe Declaratory Ruling", a true and accurate copy of which is attached hereto as Exhibit 1 for the Court's convenience).[1] Specifically, the FCC found that GroupMe, Inc. ("GroupMe") could obtain prior express consent from a called party to be autodialed—by a group texting application—via an intermediary through GroupMe's Terms of Service Agreement

---

[1] In general, a district court gives great weight, if not controlling weight, to final decisions of the FCC implementing and interpreting the TCPA. *CE Design, Ltd. v. Prism Business Media, Inc.,* 606 F.3d 443, 450 (7th Cir.2010) (stating that "[i]n passing the Hobbs Act, Congress vested the power of agency review of final FCC orders exclusively in the courts of appeals" and that "[t]he Hobbs Act's jurisdictional bar thus does not leave private parties without a mechanism for judicial review of agency action; it merely requires litigants to seek review through its specific procedural path"); *Jamison,* 290 F.R.D. at 97 (stating in a TCPA case that the court is "bound by the FCC's orders, which are final and controlling").

5

which required the intermediary "to represent that each individual added to the group has consented to be added and to receive text messages." Id. ¶¶ 3, 14 (noting that GroupMe "gain[s] prior express consent based upon its Terms of Service agreement."). The GroupMe terms of service specifically set forth that "you represent and warrant that each person you add to a group has consented to receive text messages from GroupMe. *See* GroupMe Terms of Service at https://groupme.com/terms. In other words, GroupMe asked the intermediary to warrant and represent that they were providing consent on the called party's behalf. *Id.* Thus, by requiring an intermediary to affirm that he or she has obtained a third party's consent, "the TCPA's goals of preventing unwanted calls of all types to wireless consumers and avoiding costs associated with those calls, as well as of protecting consumer privacy are not negatively impacted." GroupMe Declaratory Ruling ¶ 9.

Here, Verizon did no such thing and the Agreement upon which it relies substantiates its failure. It did not ask Tarter to obtain or give consent on behalf of Kim. Unlike GroupMe, Verizon had no mechanism and made no inquiry into whether the owner of the phone number referenced in its Agreement consented to autodialed or prerecorded calls from Verizon. Accordingly, Verizon has no basis for its claims of indemnity and breach against Tarter and its third-party complaint should be dismissed pursuant to Rule 12(b)(6).

## CONCLUSION

Based on the foregoing, third-party defendant, Tasha Tarter, by counsel, respectfully requests that the Court dismiss Verizon's third-party complaint, with prejudice. Tarter further requests that the Court award her all appropriate attorney's fees and costs.

Dated: June 1, 2015

Respectfully submitted,

By   /s/ Amy L. Cueller
    Amy L. Cueller, Esq.
    LEMBERG LAW, LLC
    1100 Summer Street, 3rd Floor
    Stamford, CT 06905
    Telephone: (203) 653-2250 ext. 5524
    Facsimile:  (203) 653-3424
    Email: acueller@lemberglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2015, a true and correct copy of the foregoing was filed with

the Clerk of the Court which sent notice of such filing to the following.

William J. Anaya, Esq.
Elizabeth A. Thompson, Esq.
ARNSTEIN & LEHR LLP
120 South Riverside Plaza
Suite 1200
Chicago, Illinois 60606-3910

By: /s/ Amy L. Cueller
    Amy L. Cueller, Esq.

7